UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN B.,<br><br>        Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,[1]<br><br>        Defendant. | Case No. 23-cv-03644-SI<br><br>**ORDER REMANDING ACTION FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 15, 21 |

Pursuant to 42 U.S.C. § 405(g), plaintiff Ryan B. filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his disability benefits claim. Plaintiff moves for summary judgment. Dkt. No. 15 ("Pl.'s Mot."). In response, the government agrees that remand is appropriate but argues that remand should be for further administrative proceedings rather than for immediate payment of benefits. *See* Dkt. No. 21 ("Def.'s Mot."). In his reply brief, plaintiff reiterates that he seeks immediate payment of benefits. Dkt. No. 23 ("Reply"). Accordingly, the sole issue on appeal before this Court is the appropriate remedy upon remand.

**BACKGROUND**

On June 29, 2015, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Administrative Record ("AR") 14, 63, 73. Plaintiff alleged an onset date of May 1, 2004. AR 2127. His date last insured is December 31, 2018. AR 15, 2246. His applications were denied

---
[1] In the case caption, the Court substitutes Martin O'Malley, the current Commissioner of Social Security, for his predecessor, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. AR 14, 88-92, 97-101. Following a November 3, 2017 hearing before Administrative Law Judge ("ALJ") David LaBarre, plaintiff received an unfavorable decision dated June 6, 2018. AR 11-29. After the Appeals Council denied plaintiff's review request, plaintiff filed for judicial review. AR 5-10, 2223-2224; *see also Ryan B. v. Saul*, No. 19-cv-03862-DMR (N.D. Cal. June 25, 2019). In the meantime, on May 21, 2019, plaintiff filed a new application for Title II and Title XVI benefits. AR 2232-2233.

In the district court action, the parties stipulated to a voluntary remand, which Judge Ryu approved on January 29, 2020. AR 2280-2284. On April 29, 2020, the Appeals Council issued an order remanding the case to an ALJ and consolidating plaintiff's claims files. AR 2285-2290. The remand order specified:

> On remand, the Appeals Council will assign this case to an administrative law judge (ALJ) for a new decision. The Appeals Council will instruct the ALJ to evaluate Plaintiff's testimony regarding his symptoms in accordance with the requirements of 20 C.F.R. § 404.1529. It will also instruct the ALJ to take further action, as warranted, to complete the administrative record.

AR 2281.

On March 7, 2023, ALJ LaBarre held a remand hearing. AR 2126, 2159-2194. On April 27, 2023, the ALJ issued an unfavorable decision after finding that plaintiff's "substance use disorder is a contributing factor material to the determination of disability . . . ." AR 2149. Although the ALJ found that plaintiff would be disabled when taking into account his substance abuse disorder, AR 2136, the ALJ went on to find that, if plaintiff stopped the substance use, he would not be disabled.[2] AR 2148-2149. Plaintiff therefore was found not entitled to disability benefits under the Social Security Act. This appeal followed.

---

[2] The Social Security Act provides that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether claimant's drug addiction and alcoholism ("DAA") is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

**LEGAL STANDARD**

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. *Id.*

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel,* 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**DISCUSSION**

Plaintiff has, among other conditions, severe depression and anxiety, post-traumatic stress disorder, a seizure disorder, leg and back pain, and some cognitive impairment. *See, e.g.*, AR 3196-3197. His treating psychiatrist has diagnosed him at various times with psychotic disorder NOS and depressive disorder NOS. AR 2118, 2890, 2901. When plaintiff was around ten years old, his mother died of a drug overdose. Around that same time, plaintiff was hit by a car and knocked unconscious, with a fractured femur that has left him with leg and back pain. AR 2904, 2912. After this incident, plaintiff began hearing voices, and the voices have continued through the date of his most recent assessment. AR 2904 (report in February 2021 that the voices started after the car accident at age 10), 3191 (reporting in February 2023 that the voices began at age 16 or 17 and that he hears voices about every other day). Plaintiff lived in foster care from age 6 to 12. At around

3

age 15, plaintiff began having seizures. AR 2912. He became homeless around age 18. Around age 21, he began taking prescribed psychotropic medications, which seemed to help, though for various reasons he was not consistent about taking his medication or attending his psychiatric appointments. Plaintiff has been hospitalized on 5150 holds and has a history of possible suicidal ideation. *See, e.g.*, AR 1361 (5150 hold in August 2013), 2246 (possible suicide attempt in February 2017). In March 2017, he was stabbed in the abdomen. AR 1677, 3155.[3]

Plaintiff has some work history, working as a home health aide for his godmother for several years around 2010 to 2013, and working for several months for a temp agency in 2022, picking up trash, digging holes, and doing other general labor. AR 36-37, 44-45, 2166, 2168-2169, 2172, 2438-2443, 3155. The temp job ended because the agency did not need more workers and plaintiff had difficulty getting to certain job sites, though plaintiff indicated at the hearing that he would have taken another job if they had offered one close by. AR 2170-2171. Plaintiff also described being let go from a job because he didn't understand instructions from his supervisor and getting frustrated and walking off a job site because he couldn't cope with certain supervisors. AR 2171-2173.

The record reflects that plaintiff used to drink alcohol regularly and that the alcohol use contributed to his seizures, though at his administrative hearings in November 2017 and again in March 2023 he reported that he had not had alcohol for several years prior. AR 50, 2177. Plaintiff regularly used cannabis throughout the claimed disability period, often reporting that he used it to "self-medicate" and to help him eat, and the record shows no period of sustained abstinence from cannabis use.

The record includes medical opinions from: Robert Streett, M.D., plaintiff's treating psychiatrist, who completed mental impairment questionnaires and short-form evaluations for mental disorders in October 2017, September 2019, January 2020, and April 2020; examining consultant Farah M. Rana, M.D., who conducted an internal medicine evaluation and authored a physical medical source statement in February 2021; examining consultant Aparna Dixit, Psy.D.,

---

[3] Dr. Catlin reported that the stabbing occurred in March 2019, when plaintiff was robbed and stabbed in a Walmart bathroom. AR 3155. However, the medical records show abdominal surgery for a stab wound in March 2017. AR 1677, 1687-1688.

1    who conducted a psychological disability evaluation and authored a mental health medical source
2    statement in February 2021; examining consultant Laura Jean Catlin, Psy.D., who completed a
3    psychological disability evaluation report in May 2021; and examining consultant Katherine Wiebe,
4    Ph.D., who authored a psychological report in February 2023.

5          As noted above, because the parties have agreed that remand is appropriate, the question the
6    Court now faces is the remedy upon remand: whether to order immediate payment of benefits or to
7    remand for further proceedings. "When the ALJ denies benefits and the court finds error, the court
8    ordinarily must remand to the agency for further proceedings before directing an award of benefits."
9    *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec.*
10   *Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court
11   may order an immediate award of benefits if three conditions are met. First, the Court asks "whether
12   the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant
13   testimony or medical opinion.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.
14   2014)). Second, the Court must "determine whether there are outstanding issues that must be
15   resolved before a disability determination can be made, . . . and whether further administrative
16   proceedings would be useful." *Id.* (citations and internal quotation marks omitted). Third, the
17   Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on
18   the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at
19   1101). Even when all three criteria are met, whether to make a direct award of benefits or remand
20   for further proceedings is within the district court's discretion. *Id.* (citing *Treichler*, 775 F.3d at
21   1101). In "rare instances," all three credit-as-true factors may be met but the record as a whole still
22   leaves doubts as to whether the claimant is actually disabled. *Trevizo*, 871 F.3d at 683 n.11. In such
23   instances, remand for further development of the record is warranted. *Id*.

24

25   **I.     Whether the ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Evidence**
26         Here, plaintiff argues in his moving papers that the ALJ failed to provide legally sufficient
27   reasons for discounting the opinions of plaintiff's treating psychiatrist Dr. Streett and examining
28   psychologists Drs. Catlin and Wiebe, and in assessing the materiality of drug and alcohol addiction.

1  By agreeing remand is appropriate, the government implicitly agrees the ALJ's opinion contains
2  reversible error. Having reviewed the record, including the medical opinions, hearing transcripts,
3  and hearing decisions, the Court agrees with plaintiff that the ALJ failed to provide specific and
4  legitimate reasons to discount the opinions of Drs. Catlin and Wiebe in particular.

5  For claims filed before March 27, 2017, such as plaintiff's, where a treating or examining
6  physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the
7  opinion without "specific and legitimate reasons that are supported by substantial evidence" in the
8  record. *Garrison*, 759 F.3d at 1012; *but see Woods v. Kijakazi*, 32 F.4th 685, 790 (9th Cir. 2022)
9  ("the 'specific and legitimate' standard is clearly irreconcilable with the 2017 regulations"). "This
10 is so because, even when contradicted, a treating or examining physician's opinion is still owed
11 deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for
12 controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th
13 Cir. 2007)).

### A. Examining Psychologist Dr. Catlin

Dr. Catlin completed a psychological evaluation report based on a telehealth evaluation conducted in May 2021. AR 3154. Dr. Catlin interviewed plaintiff and conducted a battery of tests. Plaintiff denied any substance use during the evaluation; however, Dr. Catlin reviewed Dr. Dixit's psychological evaluation from several months earlier in which it was stated that plaintiff "admitted to using and abusing alcohol, marijuana, methamphetamine, cocaine, and hallucinogens since he was a teenager. In the report he admitted to only using marijuana recently." AR 3156.

Dr. Catlin listed the following diagnostic impressions: major depressive disorder, recurrent, moderate; unspecified schizophrenia spectrum and other psychotic disorder; substance/medication induced psychotic disorder – rule out; PTSD; unspecified neurological disorder; polysubstance use disorder – rule out. AR 3159. Dr. Catlin found it was "possible that some of the claimant's psychotic symptoms are the result of his use of methamphetamine, however, this is difficult to determine because severe depression and trauma can also produce auditory hallucinations and paranoid delusions." AR 3161. Dr. Catlin found "clinically significant decline in cognitive

functioning[,]" that plaintiff would "have great difficulty understanding, remembering and/or applying information given to him[,]" and that he would "have difficulty learning new tasks, taking instruction from a manager or supervisor, and difficulty applying the information given to him." *Id.* She also noted that his "mental health symptoms will make interacting with others very difficult." *Id.* Dr. Catlin found plaintiff would be absent from work four or more days per month and that he would be expected to be "off task" more than 30% of the workday. AR 3163-3164.

In assigning plaintiff's residual functional capacity ("RFC") in the absence of substance use, the ALJ accepted Dr. Catlin's opinion regarding the areas in which plaintiff was "moderately" limited but rejected Dr. Catlin's opinion regarding the areas in which plaintiff's limitations were "extreme" or "marked." *See* AR 2146-2147. The ALJ rejected these portions of Dr. Catlin's report "because said opinion is not as convincing as the evaluation done by Dr. Dixit (see Ex. 23F), which was done in person, allowing the examiner to make observations based upon being with the claimant in person." AR 2147.

The ALJ went on to discount Dr. Catlin's opinion because "the claimant denied substance use" to Dr. Catlin, whereas the report from Dr. Dixit "shows that the claimant admitted to using and abusing alcohol, marijuana, methamphetamine, cocaine, and hallucinogens since he was a teenager . . . ." *Id.* The ALJ also observed that Dr. Catlin did not define "moderate" and "marked" limitations in accordance with the agency's definitions and found it "unpersuasive that Dr. Catlin was willing to give such extreme limitations just by one visit over the telephone, especially with drug use involved, as this appears to be advocacy." *Id.*

Thus, a major reason for rejecting Dr. Catlin's findings in favor of Dr. Dixit's was because Dr. Dixit evaluated plaintiff in person rather than by phone. Yet elsewhere in the decision the ALJ discounted Dr. Dixit's opinion, recognizing that the "longitudinal evidence supports greater limitation." *See* AR 2135. Plaintiff argues that Dr. Dixit's report is an "outlier" in the record, and upon review this Court agrees. For one, as plaintiff notes, the record does not support Dr. Dixit's report of methamphetamine, cocaine, and hallucinogen use. The record is replete with evidence of plaintiff's alcohol and marijuana use, but no other assessment, treatment notes, or testimony support

Dr. Dixit's statement that plaintiff has used these other drugs since he was a teenager.[4] Additionally, Dr. Dixit erred in reporting plaintiff's demographics, stating that he had no children and that he graduated from high school. AR 2904. Plaintiff has an eighth or ninth grade education and two children. AR 46, 2164, 3183. Given the inaccuracies and questionable drug history mentioned in Dr. Dixit's report, the Court finds the fact that Dr. Dixit conducted her assessment in person is not a specific and legitimate reason to discount Dr. Catlin's findings simply because the latter were based on a telephone assessment. This is particularly so where Dr. Catlin's report shows that she administered a range of tests and where the report is detailed, well-reasoned, and thorough. The ALJ himself stated that "[t]he examinations and written statements by Dr. Catlin supported her opinion . . . ." AR 2147.

Moreover, Dr. Catlin accepted Dr. Dixit's report regarding substance use and incorporated that substance use history into her own assessment. *See* AR 3165. For instance, Dr. Catlin opined that it was difficult to determine whether plaintiff's psychotic symptoms resulted from methamphetamine use or from severe depression and trauma. AR 3161. Thus, to the extent the ALJ rejected Dr. Catlin's opinion because plaintiff reported no substance use to her, that was not a specific and legitimate reason, where Dr. Catlin incorporated and accounted for the very same drug use history relied on by Dr. Dixit.

Finally, Dr. Catlin's functional assessment used limitation definitions that are more precise than the definitions the agency assessment provides. For instance, Dr. Catlin's report defines "marked limitation" as "ability to function seriously limited (performance would be expected to be precluded by more than 20%)," where the agency definition states: "There is a serious limitation in this area. There is a substantial loss in the ability to effectively function." *Compare* AR 3162 *with* AR 2908. In such circumstances, the Court agrees with plaintiff that this is not a legitimate reason to reject Dr. Catlin's findings.

---

[4] At the March 2023 hearing, the ALJ asked, "And when was the last time you did any kind of alcohol or street drug?", to which plaintiff answered, "Very long time." AR 2176-2177. The ALJ did not clarify what he meant by "street drug," and plaintiff himself did not use that term.

8

**B.     Examining Psychologist Dr. Wiebe**

In February 2023, Katherine Wiebe, Ph.D., conducted a three-hour assessment of plaintiff by phone. AR 3181-3182. Plaintiff reported that he used marijuana since age 16 and that he had last used it about a week before the assessment. AR 3186. He reported abstaining from alcohol for the last 12 years after learning that it caused seizures. *Id.* He denied use of any other substances and specifically denied a history of using the substances mentioned by Dr. Dixit: cocaine, methamphetamine, and hallucinogens. *Id.* He reported that he still hears voices about every other day. AR 3191. Dr. Wiebe's report is a detailed, 20-page report in which she chronicles plaintiff's history, summarizes the reports of prior doctors and examiners, and discusses the results of the numerous tests she administered.

Based on Dr. Wiebe's testing, she found moderate cognitive impairment, severe impairment of memory, moderate to severe impairment in executive functioning, severe impairment in language, and mild to moderate impairment in sensory/motor abilities. AR 3188-3189. Test results indicated severe depression and severe anxiety. AR 3189. Dr. Wiebe found plaintiff's "MCMI-IV diagnostic profile indicates that he has psychotic disorder symptoms, with severe recurrent depression, severe anxiety, and dysphoria; Posttraumatic Stress Disorder; and possible mood and somatic symptoms. Results also indicate long-term Personality Disorder patterns including Paranoid Personality Disorder, and Schizoid Personality Disorder, with Melancholic and Negativistic Personality Traits." AR 3196. Among her many diagnostic impressions was rule-out polysubstance use disorder by history. AR 3198.

As with Dr. Catlin, the ALJ gave "great weight" to all moderate limitations that Dr. Wiebe assigned but discounted Dr. Wiebe's opinion where she found that plaintiff would have marked limitations. *See* AR 2147. In explaining why he was discounting Dr. Wiebe's findings, the ALJ erroneously stated that "the claimant denied using any other substances other than alcohol." *See id.* This statement is belied by the Wiebe report itself, which notes: "[Plaintiff] reported that first [sic] used marijuana when he was about 16 years old and last used marijuana about one week before this assessment. He said he uses it 'not often,' to help with depression and appetite. He reported that he has a cannabis card that 'just expired.'" AR 3186. Further, as noted above, Dr. Dixit's report—

9

1    which contains other errors—is the only report to state that plaintiff used cocaine,
2    methamphetamine, and hallucinogens. Thus, plaintiff's denial to Dr. Wiebe that he used any of
3    these substances is consistent with the extensive medical records that lack reference to these drugs.
4    Accordingly, the ALJ's reason for discounting Dr. Wiebe's opinion is based on a mis-reading of Dr.
5    Wiebe's report and is not supported by substantial evidence in the record.

6    The ALJ gave a second reason for assigning only partial weight to some of Dr. Wiebe's
7    findings: "Dr. Wiebe abruptly diagnosed the claimant, based upon one evaluation, with an
8    unspecified personality disorder, which is unpersuasive because this diagnosis is usually diagnosed
9    over a longer treatment period." AR 2147. But as plaintiff notes, Dr. Wiebe reviewed numerous
10   other medical opinions and test results reported by treating and examining doctors and herself
11   administered a range of tests and procedures. The Court finds that the ALJ's assessment that Dr.
12   Wiebe gave an incorrect and "abrupt" diagnosis was an impermissible substitution of his own
13   judgment for that of a doctor. *See Nelsen v. Barnhart*, No. C 00-2986 MMC, 2003 WL 297738, at
14   *4 (N.D. Cal. Feb. 4, 2003) ("An ALJ, however, may not substitute his own view of the effects of a
15   mental impairment on a claimant for that of an examining psychologist") (citations omitted).

16   In sum, the ALJ erred in rejecting the opinions of Dr. Catlin and Dr. Wiebe without providing
17   specific and legitimate reasons supported by substantial evidence.

18

19   **II.   Whether Further Administrative Proceedings Would Be Useful**

20   The Court next asks whether further administrative proceedings would be useful. "In
21   evaluating this issue, we consider whether the record as a whole is free from conflicts, ambiguities,
22   or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to
23   benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1103-04 (9th Cir. 2014)
24   (citing *Moisa v. Barnhart,* 367 F.3d 882, 887 (9th Cir. 2004)). The government argues there are
25   numerous inconsistencies in the record that remain to be resolved, including questions around
26   whether Dr. Streett knew of plaintiff's drug use and whether plaintiff's symptoms abate when the
27   drug use is stopped.

28   As the government notes, the claimant bears the burden of proving that his substance use is

not a material factor contributing to his disability. *See Parra*, 481 F.3d at 745. Here, the Court is unable to find that all factual issues have been resolved where there is no clear medical opinion in the record regarding plaintiff's limitations if he stopped the marijuana use. Although the reports by Drs. Catlin and Wiebe are thorough and well supported, neither one specifically opines on how plaintiff's marijuana use impacts his limitations or whether his symptoms would persist even if he stopped using marijuana. The same goes for the reports by treating psychiatrist Dr. Streett, where it is unclear from the face of the reports whether Dr. Streett was aware of the marijuana use or how he took that into account when forming his opinion. *See* AR 2118-2122, 2890-2903.

If any one of these doctors had made the same findings after specifying that they had taken plaintiff's marijuana use into account and that the findings would not change even if he stopped using marijuana, then this Court would find the record complete and—accepting the improperly discounted opinion(s) as true—the record as a whole would leave no doubt to plaintiff's disability. But without this key piece regarding whether or how plaintiff's marijuana use impacted the doctors' opinions, the Court cannot so find.

The Court is less concerned with factual inconsistencies regarding alcohol and the alleged use of drugs besides marijuana. Although plaintiff has inconsistently reported the precise date of his abstinence from alcohol, it is clear from the record, and undisputed by the parties, that plaintiff's alcohol use triggered his seizures and that he did at some point (perhaps around late 2017, perhaps later) stop using alcohol. Although the frequency of his seizures decreased, they did not stop altogether. *See* AR 41 (reporting seizures about every 3-4 months, during a period where it appears plaintiff was still using alcohol), 2176-2177 (reporting seizure a year prior, where he reports no alcohol use since three years prior). Given that two administrative hearings and numerous medical examinations have failed to pinpoint precisely when plaintiff stopped drinking alcohol, this Court is not hopeful that a third administrative hearing would elucidate the matter. Further, as discussed above, nothing in the record outside of Dr. Dixit's report indicates long-term use of drugs besides marijuana.[5]

---

[5] Dr. Catlin and Dr. Wiebe's references to methamphetamine, cocaine, or hallucinogen use were made in reliance on what Dr. Dixit reported. *See* AR 3156, 3186.

1    Accordingly, the Court will remand this case on an open record for development of the record on the question of whether and how plaintiff's marijuana use impacts his symptoms and limitations. On remand, plaintiff shall be given leave to submit a supplemental medical report from Drs. Streett, Catlin, or Wiebe, or of another medical provider as appropriate, if he wishes to do so. Likewise, the agency shall be given leave, but is not required, to order a further evaluation on the question of plaintiff's marijuana use. The agency may, but is not required to, conduct a further administrative hearing if such a hearing would be useful. The Commissioner shall then render a new decision, incorporating any newly received evidence and re-visiting the medical opinions in light of the findings of error stated in this order.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment (Dkt. No. 15) and GRANTS defendant's cross-motion seeking remand for further proceedings (Dkt. No. 21). The decision of the Commissioner is hereby REVERSED and the Court REMANDS this case on an open record pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this order.

**IT IS SO ORDERED**.

Dated: September 17, 2024

SUSAN ILLSTON
United States District Judge